## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

|                                              |     |                        |
| -------------------------------------------- | --- | ---------------------- |
| **MAURICE JERMAINE McMILLAN,**              | *   |                        |
| **Plaintiff,**                               | *   |                        |
| **v.**                                       | *   | **CIVIL NO. JKB-22-1675** |
| **MARK TEMPLIN, et al.,**                    | *   |                        |
| **Defendants.**                              | *   |                        |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### MEMORANDUM

Plaintiff Maurice Jermaine McMillan, proceeding *pro se,* brought this action against Defendants Mark Templin, John Darvish, DARCARS of Cherry Hill Road, Inc. ("DARCARS," and collectively with Darvish, the "DARCARS Defendants"), Toyota Financial Services ("TFS"), Toyota Lease Trust ("TLT"), and Toyota Motor Credit Corporation ("TMCC," and collectively with TFS and TLT, the "Toyota Defendants"). (Compl., ECF No. 1.) McMillan leased a Toyota vehicle from DARCARS in November of 2020, and he claims that the Defendants violated multiple federal statutes in the making and enforcement of his Lease Agreement. (*See generally id.*) Several Motions are now ripe for decision: a Motion for Extension of Time by the Toyota Defendants (ECF No. 15); two Motions by McMillan to Add Defendants, which the Court construes as Motions to Serve Supplemental Pleadings pursuant to Federal Rule of Civil Procedure 15(d) (ECF Nos. 17, 18); a Motion by McMillan to Amend the Complaint (ECF No. 29); Motions to Dismiss by the DARCARS Defendants (ECF No. 16) and the Toyota Defendants (ECF No. 25); and a filing by McMillan styled as a "Motion to Remove Toyota's Motion to Dismiss," (ECF No. 27), which the Court construes as McMillan's Response in Opposition to the Toyota Defendants'

1

Motion to Dismiss. No hearing is necessary to resolve these Motions. *See* Local Rule 105.6 (D. Md. 2021). For the reasons stated below, the Court will grant the Toyota Defendants' Motion for Extension of Time, deny McMillan's Motions to Add Defendants and to Amend, grant the Toyota Defendants' and DARCARS Defendants' Motions to Dismiss, and dismiss McMillan's claims against Templin *sua sponte*.

### I.    Factual and Procedural Background[1]

On November 2, 2020, Maurice McMillan "went to DARCARS . . . to take delivery of a new 2021 Toyota RAV4 after negotiating the terms of the lease over the phone with a sales manager" there. (Compl. ¶ III.) At the dealership, a sales manager "told [McMillan] he could not honor the rate [that had been] quote[d] over the phone because [McMillan's] credit score wasn't high enough." (Consumer Financial Protection Bureau ("CFPB") Compl., Ex. E to Compl., ECF No. 1-2 at 14–19.) After the sales manager found a different vehicle better suited to McMillan's budget, McMillan "re-negotiated the terms" of the Lease Agreement, "signed all the required documents, and drove off in [his] newly leased vehicle." (*Id.*; Compl. ¶ III.) McMillan's Lease Agreement lists DARCARS as the initial lessor and TLT as the assigned lessor, and it specifies that TMCC "servic[es the] lease on behalf of TLT." (Lease Agreement, Ex. A to Compl., ECF No. 1-2 at 1–7, ¶ 1.) The logo of TFS, an "umbrella brand" of Toyota's that "markets the products of" TMCC, appears on each page of the Lease Agreement. (*See id.*); *Company Overview*, TOYOTA FIN. SERVS., https://www.toyotafinancial.com/us/en/about_us/company_overview.html (last visited May 30, 2023).

---

[1] At the motion to dismiss stage, the "well-pled allegations of the complaint" are accepted as true and "the facts and reasonable inferences derived therefrom" are construed "in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997) (citing *Little v. Fed. Bureau of Investigation*, 1 F.3d 255, 256 (4th Cir. 1993)). In light of the Court's duty to "liberally construe[ ]" *pro se* filings, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citation omitted), it will draw allegations from both the Complaint and its attached exhibits.

For the next approximately eighteen months, McMillan made regular monthly lease payments of $458 to TMCC, at some point "set[ting] up . . . auto-pay" so that TMCC would process his payments automatically. (*See* Credit Reports, Ex. F to Compl., ECF No. 1-2 at 20–26; Compl. ¶ III.)   Then, on April 24, 2022, McMillan sent an "Affidavit of Truth" to TFS "citing them and [DARCARS] for violating numerous Truth in Lending Act [("TILA"), 15 U.S.C. § 1601, *et seq.*] statutes[,]" and he "invoiced [TFS] for the violations they committed." (Compl. ¶ III.)   In the Affidavit of Truth, McMillan wrote that he was choosing to "exercise the right of recission" that he believed the TILA afforded him. (Aff. Truth, Ex. C to Compl., ECF No. 1-2 at 9–11.)   He requested that TFS "[r]eturn all moneys paid" under the Lease Agreement, "[p]ay the invoice" he had submitted, "[z]ero out the balance on this account," "[s]en[d him] the free and clear title of the vehicle," and "[c]ontact all the consumer reporting agencies and report the transaction has been satisfied[.]" (*Id.*)   On April 28, 2022, McMillan submitted a complaint about TFS to the CFPB. (CFPB Complaint.)   TFS replied to both McMillan's Affidavit of Truth and his CFPB complaint, asserting that his claims were "not supported by the facts" and declining to grant any of his requested relief. (TFS Letter, Ex. D to Compl., ECF No. 1-2 at 12–13; *see also* CFPB Complaint at 16–17.)   After TFS received notice of McMillan's intent to rescind the Lease Agreement, TMCC processed at least three more lease payments from McMillan via auto-pay. (Compl. ¶ III.)

McMillan filed this lawsuit on July 7, 2022. (*See* Compl.)   In the Complaint's case caption, TMCC, TFS, TLT, and DARCARS are listed as defendants. (*Id.* at 1.)   Additionally, in the body of the Complaint, McMillan listed as defendants Templin, the Chief Executive Officer of TFS, and Darvish, the President and Chief Executive Officer of DARCARS. (*Id.* ¶ I(B).)   McMillan claims that the Defendants violated various subsections of the TILA; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §

3

1681 *et seq.*; the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C. § 6801 *et seq.*; and three provisions of the United States Criminal Code, 18 U.S.C. §§ 892–94, which prohibit certain extortionate credit-extension practices. (*Id.* ¶ II(A).)   McMillan's claims relate broadly to the terms of the Lease Agreement itself, DARCARS's conduct in negotiating the Lease Agreement, and TFS's conduct in servicing the Lease Agreement. (*See generally id.* ¶ III.)  He makes no factual allegations relating to Templin, Darvish, TLT, or TMCC. (*See generally id.*)  McMillan requests relief in the form of $1,821,775.72 in statutory damages, "a clear title" to the vehicle he leased, and "a satisfied account status on all credit reports[.]" (*Id.* ¶ IV.)

The Toyota Defendants were served with McMillan's lawsuit on September 22, 2022. (ECF No. 7.)  There is no evidence that Templin was ever served, and he has yet to appear in this matter. (*See generally* Docket.)  On October 11, 2022, attorney James K. Haney entered an appearance on behalf of TMCC (ECF No. 9) and requested a 30-day extension of time to respond to the Complaint, noting that his firm "was only recently retained and . . . require[d] some time to review the client file and prepare a proper response." (ECF No. 11.)  On October 27, 2022, before the Court had addressed that request, Mr. Haney, this time appearing on behalf of all of the Toyota Defendants, moved for another extension of time to respond, claiming that his firm "was only recently retained to represent all three" Toyota Defendants and needed time "to complete their assessment and prepare a responsive pleading." (ECF No. 15.)  This Motion remains pending.

The Toyota Defendants then moved to dismiss McMillan's Complaint. (ECF No. 25.)  They assert that McMillan "fails to assert any specific act or conduct" other than "various conclusory allegations regarding alleged violations of federal law" that would establish any of the Toyota Defendants' liability. (*Id.* at 4.)  Alternatively, they point out various issues with

McMillan's statutory claims, including applicability, timeliness, and the absence of private rights of action. (*See generally id.*)

The DARCARS Defendants were served on October 17, 2022. (ECF No. 14.) Counsel for the DARCARS Defendants entered appearances on October 13, 2022, (ECF Nos. 12, 13), and filed a Motion to Dismiss on November 7, 2022.[2] (ECF No. 16.) The DARCARS Defendants assert that the "single reference to Mr. Darvish on page 3 of the Complaint" is "woefully inadequate to state a claim against [him]." (*Id.* at 2.) As to DARCARS, they contend that McMillan's "various conclusory allegations" do not "assert any specific act or conduct" that would tend to show that DARCARS violated the statutory provisions to which McMillan cites. (*Id.* at 4.) They also argue that McMillan's statutory claims are variously time-barred, inapplicable, or not supported by private rights of action. (*See generally id.*)

Also on November 7, 2022, McMillan filed two Motions seeking to add counsel for the Toyota Defendants and the DARCARS Defendants as defendants in this lawsuit. (ECF Nos. 17, 18.) McMillan alleges that the Defendants are "debt collectors" within the meaning of FDCPA, and he argues that "if you are an attorney representing a debt collector, you are in fact a debt collector"; accordingly, he believes that defense counsel have made themselves liable for his FDCPA claims by appearing in this matter. (*See id.*) McMillan later filed a Motion to Amend his Complaint, which seeks to increase the amount of his requested damages after adjusting for

---

[2] In his Response in Opposition to the DARCARS Defendants' Motion to Dismiss (ECF No. 20), McMillan claims that counsel's "[a]ppearance was prematurely entered" because the DARCARS Defendants had not yet received service of process on October 13, 2022. He argues that the DARCARS Defendants' "Motion to Dismiss should not be permitted" because when it was filed counsel was impermissibly "operating under Toyota's summons[.]" This argument is without merit. The purpose of a summons is to notify a defendant of a newly-filed lawsuit and the defendant's obligations to appear and respond. *See* Fed. R. Civ. P. 4(a). Receipt of a summons is not, however, a prerequisite to appearance; indeed, Federal Rule of Civil Procedure 4(d) permits certain classes of defendants to waive service of a summons. Counsel for the DARCARS Defendants thus committed no error by entering their appearances before the DARCARS Defendants received McMillan's summons.

inflation and to include three additional exhibits: an accounting of the new damages claim, a billing statement from TFS, and a record of McMillan's loan payment history. (ECF No. 29.)

McMillan has also responded in opposition to both Motions to Dismiss.[3, 4] (ECF Nos. 20, 27.) He asserts that the Motions should be denied because, "[i]if the merits presented in the complaint failed to meet the standards to be heard in federal court, . . . [the Court] wouldn't have issued the summons[es] in the first place." (Resp. Opp'n DARCARS Defs.' Mot. Dismiss, ECF No. 20, at 1.) As to the Toyota Defendants' Motion to Dismiss, he argues as well that because the Court "ha[d] not granted Toyota's Motion for an Extension of Time" to respond when the Motion to Dismiss was filed, it "was submitted without the proper authorization" and should therefore be denied. (Resp. Opp'n Toyota Defs.' Mot. Dismiss, ECF No. 27.)

## II.    Legal Standard

After a defendant has been sued in federal court, it generally must either answer the plaintiff's complaint or file a motion to dismiss the complaint. *See* Fed. R. Civ. P. 12. One of the defenses that a defendant may raise in a motion to dismiss is that the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim upon which relief can be granted, the plaintiff "need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Ray v. Amelia Cnty. Sheriff's Off.*, 302 F. App'x 209, 211

---

[3] McMillan incorporated his arguments in opposition to the DARCARS Defendants' Motion to Dismiss (ECF No. 20) in his Response in Opposition to the Toyota Defendants' Motion to Dismiss. (*See* ECF No. 27 ("I have already submitted a Response in opposition . . . I'm in total opposition [to] this Motion to Dismiss, as I am in opposition of DARCARS's Motion to Dismiss.").)

[4] To the extent that McMillan intended his "Motion to Remove" the Toyota Defendants' Motion to Dismiss (ECF No. 27) to be a Motion to Strike under Rule 12(f), it is denied. Rule 12(f) allows a court to "strike from a pleading any insufficient defense[.]" Rule 12(f) motions are disfavored "'because striking a portion of a pleading is a drastic remedy . . . often sought by the movant simply as a dilatory tactic.' Nevertheless, 'a defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense . . . should be deleted.'" *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1380 (2d ed. 1990)). The Court does not find that any of the arguments in the Toyota Defendants' Motion to Dismiss are so confusing or unrelated as to warrant striking. (*See* ECF No. 25.)

(4th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]"). The factual allegations supporting the claim "'must be enough to raise a right to relief above the speculative level . . . [and] state a claim to relief that is plausible on its face.'" *Ray*, 302 F. App'x at 211 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility" when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or . . . 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005). "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint . . . must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, this responsibility "does not transform the district court into an advocate for the *pro se* litigant." *Ho Won Jeong v. Cabrera*, 799 F. App'x 185, 186 (4th Cir. 2020) (citing *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012)). In other words, courts may not "conjure up questions never squarely presented to them" or "construct full blown claims from . . . fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

### III.   *Analysis*

For the reasons set forth below, the Court will first exercise its discretion to grant the Toyota Defendants' Motion for Extension of Time to File. Next, it will deny McMillan's Motions to Add Defendants and to Amend the Complaint. Finally, it will grant the Defendants' Motions to Dismiss and dismiss McMillan's claims against Templin *sua sponte*, concluding that McMillan's Complaint does not state a claim for relief against any Defendant. Accordingly, this case will be dismissed.

### A.   *Toyota Defendants' Motion for Extension of Time to File*

District courts have "significant discretion . . . to manage their own dockets." *Landino v. Sapp*, 520 F. App'x 195, 197 (4th Cir. 2013). This discretion is reflected in Federal Rule of Civil Procedure 6(b)(1), which provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time[.]" A request for an extension made before the time expires "normally will be granted in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party." 4B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1165 (4th ed. 2023). Motions for extension of time are routinely granted after the fact. *See, e.g., Brooks-McCollum v. State Farm Ins. Co.*, 566 F. App'x 210, 211 n.2 (4th Cir. 2014) (granting "all outstanding motions for extension of time" after the fact where "no orders acting on these motions ha[d] been entered" but the "pertinent pleadings" had subsequently been filed); *Henson v. Miller*, Civ. No. JKB-16-3404, 2017 WL 6501796, at *1 n.1 (D. Md. Dec. 15, 2017) (granting a motion for extension after the fact).

This matter was originally assigned to another Judge in this District, and it was recently reassigned to the Undersigned. The Court acknowledges that prior to reassignment, the docket management of this case was not exemplary. However, there is no evidence that the Toyota

8

Defendants' delay in filing their Motion to Dismiss prejudiced McMillan: he seeks no time-sensitive relief, and as a *pro se* litigant, he has not been forced to accrue additional attorneys' fees. Further, there is no evidence of bad faith on the part of the Toyota Defendants: they moved for an extension promptly, cited good cause for seeking the extension, (*see* ECF No. 15 ("Undersigned counsel was only recently retained to represent all three (3) Defendants in this matter")), and subsequently submitted a Motion to Dismiss that addresses the substance of McMillan's claims. Finally, as discussed in detail below, the Court concludes that McMillan's claims cannot survive the Toyota Defendants' Motion to Dismiss, and, considering the Fourth Circuit's "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), concludes that it would be inappropriate to allow McMillan's suit to move forward against the Toyota Defendants based solely on a technicality. Accordingly, the Court in its discretion will grant the Toyota Defendants' Motion for Extension (ECF No. 15) out-of-time, and it will consider their Motion to Dismiss (ECF No. 25) to have been timely filed.

## B. *Plaintiff's Motions to Add Defendants and Amend the Complaint*

Next, the Court will address McMillan's Motions to Add Defendants and his Motion to Amend the Complaint. (ECF Nos. 17, 18, 29.) They will each be denied.

### 1. *Legal Standard*

Federal Rule of Civil Procedure 15(a)(1)(A) empowers a party to "amend its pleading once as a matter of course" within 21 days after serving it. "[I]f the pleading is one to which a responsive pleading is required," such as a complaint, then the party may also amend as a matter of course within "21 days after service of a responsive pleading or . . . service of a motion under Rule 12(b) . . . , whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). The Advisory Committee's notes on Rule 15 clarify that the "21-day periods to amend once as a matter of course . . . are not cumulative,"

meaning that "there is no new 21-day period" each time a new responsive pleading or Rule 12 motion is filed. Fed. R. Civ. P. 15 advisory committee's note to 2009 amendment. If the party seeking to amend no longer has the right to do so as a matter of course, it "may amend its pleading only with the opposing party's written consent or the court's leave."[5] Fed. R. Civ. P. 15(a)(2).

"The court should freely give leave" to amend a pleading "when justice so requires." *Id.* "[A] request to amend should only be denied if one of three facts is present: 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile.'" *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012) (quoting *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009)). A district court may deny a motion to amend as futile where "the proposed amendments could not withstand a motion to dismiss." *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995) (citing *Glick v. Koenig*, 766 F.2d 265, 268–69 (7th Cir. 1985)); *see also* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1487 (3d ed. 2023) ("[N]umerous courts have held that a proposed amendment that clearly is frivolous, advancing a claim or defense that is legally insufficient on its face, or that fails to include allegations to cure defects in the original pleading, should be denied.").

"Although Rule 15(a) does not expressly state that an amendment must contain only matters that occurred within a particular time period, Rule 15(d) provides that any 'transaction, occurrence, or event that happened after the date of the pleading' should be set forth in a supplemental pleading." 6 Mary Kay Kane & Howard M. Erichson, *Federal Practice & Procedure* § 1473 (3d ed. 2023); *see also Franks v. Ross*, 313 F.3d 184, 198 n. 15 (4th Cir. 2002) ("A supplemental pleading differs from an amended pleading because it relates to matters

---

[5] McMillan does not claim that he obtained Defendants' consent to file his Motion to Amend. (*See generally* ECF No. 29.)

occurring subsequent to the filing of the initial complaint."). In contrast to amended pleadings, supplemental pleadings always require leave of court to file. *See* Fed. R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading[.]"). "[T]he standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical. In either situation, leave should be freely granted, and should be denied only where 'good reason exists[.]'" *Franks*, 313 F.3d at 198 n.15 (quoting *Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir. 2001)).

### 2. *Analysis*

McMillan's Motion to Amend the Complaint's requested relief and exhibits (ECF No. 29) will be denied as futile because it cannot cure the defects in McMillan's original Complaint. McMillan did not have the right to amend as a matter of course because his Motion to Amend was filed three months after the DARCARS Defendants moved to dismiss under Rule 12(b)(6). (*See* ECF Nos. 16, 29); Fed. R. Civ. P. 15 advisory committee's notes to 2009 amendment. As explained below, McMillan's Complaint fails to state a claim against any Defendant that would entitle him to monetary damages, and his request to "revise[ the] amount of relief sought after adjusting for inflation" does not alter the substance of his claims. (ECF No. 29.) Nor does the Motion's request that the Court "intervene" in what seems to be a dispute between McMillan and TFS over the status of his account and monthly payments, as McMillan cites to no authority that would empower the Court to do so. (*Id.*) Because the Motion to Amend neither cures McMillan's existing claims nor asserts any new claims that would entitle McMillan to relief, it will be denied as futile.

McMillan's Motions to add defense counsel as defendants in this case (ECF Nos. 17, 18) concern events that occurred after McMillan filed the Complaint. Therefore, they are properly

11

construed not as Motions to Amend under Rule 15(a)(1) but rather as Motions to Serve Supplemental Pleadings under Rule 15(d). McMillan must have the Court's permission to supplement his Complaint. *See* Fed. R. Civ. P. 15(d). The Court will not grant him permission because the Motions advance legally insufficient claims. McMillan argues that, by appearing on the record, defense counsel violated FDCPA § 1692e(3), which provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," including by making the "false representation or implication that any individual is an attorney[.]" McMillan's theory is that, "[a]ccording to the [FDCPA], if you are a debt collector, you cannot be an attorney. And if you are an attorney representing a debt collector, you are in fact a debt collector." (ECF Nos. 17, 18.) There is no basis for these assertions in the text of § 1692e(3). First, as discussed in detail below, McMillan has failed to allege that the Defendants are "debt collectors" within the meaning of the FDCPA. Even assuming that the Defendants *are* debt collectors, § 1692e(3) does not impute debt collector status to defense counsel, as McMillan claims; it prohibits any individual from *falsely* claiming to be an attorney while attempting to collect a debt. McMillan provides no facts to support his allegation that defense counsel are *not* in fact attorneys; further, he does not explain how defense counsel are attempting to collect a debt by representing Defendants in this action. He therefore fails to state a claim against defense counsel under § 1692e(3). Accordingly, the Court finds that good reason exists to deny McMillan's Motions to add defense counsel as defendants. (ECF Nos. 17, 18.)

### C. Motions to Dismiss

The Court turns now to the merits of Defendants' Motions to Dismiss. (ECF Nos. 16, 25.) First, it notes that McMillan's main objection to the Motions—that they should be denied because summonses would not have issued had the "merits presented in the complaint failed to meet the

standards to be heard in federal court"—is unavailing. (Resp. Opp'n DARCARS Defs.' Mot. Dismiss at 1.) The issuance of a summons in no way depends on the merits of a case. A summons serves only to notify a defendant of a lawsuit and the defendant's obligation to respond to it. *See* Fed. R. Civ. P. 4(a). As explained in Part II above, Federal Rule of Civil Procedure 12(b)(6) allows defendants to respond by attacking the sufficiency of the plaintiff's claims. Defendants have thus committed no error in filing Motions to Dismiss.

The Court will consider the Motions to Dismiss together. First, it determines that McMillan has failed to allege any conduct by TLT, TMCC, or Darvish that would establish their liability for any of his claims. Next, although Templin has not moved to dismiss McMillan's Complaint, the Court will dismiss all claims against him *sua sponte* because McMillan similarly alleges no conduct by him. Finally, it will turn to McMillan's claims against DARCARS and TFS, finding that some are not legally viable and the rest are not pled with the requisite factual plausibility. *See Iqbal*, 556 U.S. at 678. Accordingly, Defendants' Motions to Dismiss will be granted and the Complaint will be dismissed.

### 1. Darvish, TMCC, and TLT

Darvish, TMCC, and TLT will be dismissed from this action because McMillan has not alleged that they committed any conduct related to his claims. All three entities are listed as Defendants in either the case caption or the body of the Complaint, but McMillan does not describe what, if any, illegal actions they took in relation to his Lease Agreement. (*See generally* Compl.) The Affidavit of Truth McMillan sent to TFS claims broadly that "numerous TILA violations" occurred in the "consumer credit transaction" between himself, DARCARS, and "Toyota Financial Services / Toyota Motor Credit Corporation / Toyota Lease Trust," but McMillan's Statement of Claim to the Court (Compl. ¶ III) alleges that only TFS and DARCARS committed statutory

13

violations. (Aff. Truth; *see generally* Compl.) Darvish's name appears nowhere in the Complaint or its exhibits except in the list of named Defendants. (*See generally* Compl., Exs. to Compl.) Having alleged no conduct by these Defendants, McMillan has not met his burden of allowing the Court to "draw the reasonable inference that [they are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As such, McMillan's claims against these Defendants fail.

### 2. *Templin*

Templin has neither appeared in this matter nor filed a motion to dismiss McMillan's claims against him. (*See generally* Docket.) Nonetheless, the Court will dismiss Templin from this action *sua sponte.* "[T]here are instances in which *sua sponte* dismissals of complaints under Rule 12(b)(6) are appropriate." *Robertson v. Anderson Mill Elementary School*, 989 F.3d 282, 290 (4th Cir. 2021) (citations and internal quotations omitted). Generally, a plaintiff "must be 'afforded notice and an opportunity to amend the complaint or otherwise respond'" before the court may dismiss his claims *sua sponte. Id.* at 291 (quoting *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002)).

Here, McMillan was notified of and given an opportunity to respond to the other Defendants' challenges to the sufficiency of his Complaint, and as discussed above and below, he has failed to establish any viable claim for relief against any Defendant, including TFS, Templin's employer. Further, beyond listing Templin as a Defendant in the body of his Complaint, McMillan has not alleged any conduct whatsoever by Templin, lawful or otherwise. (*See generally* Compl.) As such, the Court concludes that McMillan cannot plausibly demonstrate Templin's liability in this matter, and it will dismiss Templin from this action.

14

### 3. *DARCARS and TFS*

Turning finally to the merits of McMillan's allegations against the remaining Defendants, DARCARS and TFS, the Court concludes that McMillan's Complaint fails to state a claim for relief against either and must therefore be dismissed.

#### a. *Criminal Claims*

McMillan asserts that TFS and DARCARS illegally "conspire[ed] to make an extortionate extension of credit" to him in violation of 18 U.S.C. §§ 892–94. (Compl. ¶ III.) He also alleges that they "willfully and knowingly failed to disclose the option to have insurance included in the [Lease Agreement's] finance charge" in violation of TILA § 1611. (Aff. Truth.) These claims fail because those statutes, which impose criminal liability, do not confer private rights of action. In order to form the basis of a civil claim for relief, a statute must provide the plaintiff with a right of action. "[C]riminal statutes do not ordinarily create individual rights" of action because they "are usually couched in terms that afford protection to the general public instead of a discrete, well-defined group." *Doe v. Broderick*, 225 F.3d 440, 447–48 (4th Cir. 2000). Therefore, "[u]nless there is a clear Congressional intent to provide a civil remedy, a plaintiff cannot recover civil damages for an alleged violation of a criminal statute." *Tribble v. Reedy*, 888 F.2d 1387, at *1 (Table) (4th Cir. Oct. 20, 1989).

None of the statutes to which McMillan cites provide civil remedies. The power to enforce the United States Criminal Code, including §§ 892–94, is "invested exclusively in the executive branch." *Stansbury v. Waldron*, Civ. No. GLR-16-3888, 2016 WL 7338430, at *2 (D. Md. Dec. 19, 2016) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *see also Lillacalenia v. Kit Fed. Credit Union*, Civ. No. 3:14CV-151-H, 2014 WL 3940289, at *2 (W.D. Ky. Aug. 12, 2014) (explaining that 18 U.S.C. §§ 892–94 "are federal criminal statutes that do not create a private

15

right of action.") (collecting cases). Similarly, TILA § 1611 "imposes criminal liability and does not create a private cause of action." *Timm v. Wells Fargo Bank, N.A.*, 701 F. App'x 171, 175 (3rd Cir. 2017). The fact that "the TILA grants a civil remedy limited to certain of its provisions" indicates that "Congress did not intend to confer a private cause of action for Section 1611[.]" *Nelson v. Credit Acceptance Corp.*, No. 1:21cv909, 2022 WL 17832129, at *4 (M.D.N.C. Oct. 20, 2022).

Because the cited criminal statutes do not empower McMillan to bring a private civil suit, these claims must be dismissed.

### b. GLBA Claim

McMillan's GLBA claim against TFS also fails for lack of a private right of action. He claims that TFS violated GLBA § 6802(b)(1)(B) by "sharing [his] non-public personal information with multiple consumer reporting agencies . . . without [his] consent and without giving [him] the opportunity to opt out[.]" (Compl. ¶ III.) The GLBA's enforcement provision provides that GLBA regulations "shall be enforced by the Bureau of Consumer Financial Protection, the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission." 15 U.S.C. § 6805(a). This provision plainly does not empower individual plaintiffs to bring suit under the GLBA. *See Waypoint Mgmt. Consulting, LLC v. Krone*, Civ. No. ELH-19-2988, 2022 WL 2528465, at *61 (D. Md. July 6, 2022) ("GLBA and its promulgating regulations do not provide for a private right of action.") (internal quotations and citation omitted); *Lyles v. U.S. Ret. & Benefit Partners*, Civ. No. PX-21-1165, 2021 WL 5233751, at *4 (D. Md. Nov. 10, 2021) ("[The GLBA] does not confer on consumers a right to sue for violations of its provisions."). McMillan's GLBA claim must therefore also be dismissed.

16

### c. *Remaining TILA Claims*

McMillan's remaining TILA claims against DARCARS and TFS fail because McMillan has not pled facts sufficient to sustain them.

McMillan claims that he had a right under TILA § 1635(a) to rescind the Lease Agreement, that DARCARS violated TILA § 1631(a) by failing to disclose his right of recission, and that TFS violated TILA § 1635(b) by continuing to process his lease payments after receiving notice of his intent to rescind the Lease Agreement. (Compl. ¶ III.) However, the right of rescission provided by TILA § 1635(a) applies only to "any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom the credit is extended[.]" McMillan has not alleged that any of the Defendants obtained a security interest in his principal dwelling as a part of his Lease Agreement, and so he has not established that he had the right to rescind the Lease Agreement pursuant to § 1635. Because he has not properly alleged his right to rescind, his rescission-related TILA claims under §§ 1631(a) and 1635(b) fail.

McMillan's claims under TILA § 1667a fare no better. To be sure, the Lease Agreement appears to fall within the category of "consumer lease[s]" to which TILA § 1667 applies: it is "a contract in the form of a lease . . . for the use of property by a natural person for a period of time exceeding four months" with a total obligation "not exceeding $50,000" made "primarily for personal, family, or household purposes[.]" 15 U.S.C. § 1667(1). However, McMillan's conclusory allegation that DARCARS and TFS "did not disclose any of the required information that pertains to a consumer lease outlined in" §§ 1667a(4), (8), and (10) is unsupported. (Aff. Truth.) Subsection a(4) requires disclosure of "[t]he amount of other charges payable by the lessee not included in the periodic payments," but McMillan does not allege that the Lease Agreement's

"Other Charges" paragraph, which discloses charges "not part of [his] Monthly Payment," fails to satisfy that provision. (Lease Agreement ¶ 5.) He also does not allege, nor does the Lease Agreement reflect, that any Defendant obtained "any security interest" in property that should have been disclosed pursuant to § 1667a(8). (*See generally* Compl.) Nor does McMillan allege that the Lease Agreement "provides that the lessee shall be liable for the anticipated fair market value of the property on expiration of the lease" such that the obligations of § 1667a(10) apply. (*See generally id.*)

McMillan also cannot prevail on his assertion that TFS and DARCARS violated TILA §§ 1605(a)(5) and (c) by failing to disclose that McMillan "had the option to pay for auto insurance himself or have it included in the finance charge[.]" (Aff. Truth.) McMillan alleges that Paragraph 15 of the Lease Agreement violates these provisions. (*See* Lease Agreement.) Paragraph 15 describes McMillan's duty to provide his choice of minimum car insurance during the Lease Term and clarifies that "no Required Insurance [would be] provided" by DARCARS or TFS. (*Id.*) Subsection 1605(a)(5)—which requires any charge for "insurance protecting the creditor against the obligor's default or other credit loss" to be included in "the finance charge in connection with any consumer credit transaction"—does not pertain to "auto insurance," which protects against *property* loss or damage. (Aff. Truth.) McMillan's reliance on that provision is therefore misplaced. Subsection 1605(c) states that any insurance "against loss of or damage to property"— car insurance—must be included in the finance charge "unless a clear and specific statement in writing is furnished by the creditor . . . setting forth the cost of the insurance if obtained from or through the creditor, and stating that the person to whom the credit is extended may choose the person through which the insurance is to be obtained." According to federal regulations expounding on the TILA, "insurance against loss of or damage to property . . . may be excluded

from the finance charge if the insurance coverage may be obtained from a person of the consumer's choice, and this fact is disclosed." *Pickett v. All In Credit Union*, Civ. No. 22-0075-KD-MU, 2022 WL 18276701, at *4 (S.D. Ala. Dec. 13, 2022) (citing 12 C.F.R. § 226.4(d)(2)) (collecting cases). Beyond summarily declaring Paragraph 15 a "violation" of § 1605(c), (*see* Lease Agreement), McMillan does not specifically allege how it falls short of the requirements of § 1605(c) and its related regulations. (*See generally* Compl.) As such, the Court cannot find that McMillan has plausibly alleged a violation of § 1605(c).

For these reasons, the Court concludes that McMillan has failed to state a viable claim under the TILA, and so those claims are dismissed.[6]

### d. *FDCPA Claims*

McMillan has not demonstrated that the FDCPA applies to either DARCARS or TFS, and his FDCPA claims will therefore also be dismissed. The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors[.]" 15 U.S.C. § 1692(e). The statute defines a "debt collector" as "any person . . . in any business *the principal purpose* of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due *another*." § 1692a(6) (emphasis added). A creditor— the entity which extends credit directly to the consumer—may be considered a debt collector only if, "in the process of collecting [its] own debts, [it] uses any name other than [its] own which would indicate that a third person is collecting or attempting to collect such debts[.]" *Id.*

McMillan does not sufficiently allege how DARCARS—a car dealership whose principal purpose is to sell and lease cars—and TFS—a company whose principal purpose seems to be managing and marketing Toyota's own in-house consumer credit transactions—are debt

---

[6] Because the Court finds that McMillan's TILA claims are substantively infirm, it need not reach the question, raised by Defendants' Motions to Dismiss, of whether they are time-barred. (*See* ECF Nos. 16, 25.)

collectors. (*See generally* Compl.)  Courts within this Circuit have repeatedly held that car dealerships are not debt collectors. *See, e.g., Sterling v. Ourisman Chevrolet of Bowie, Inc.*, 943 F. Supp. 2d 577, 585 (D. Md. 2013) ("Plaintiff has not tried to allege, nor could she succeed in alleging, that any of Defendants is operating a business the principal purpose of which is to collect debts. Rather, Defendants are a car dealership and its employees; the principal purpose of their business is to sell cars."); *Eley v. Evans*, 476 F. Supp. 2d 531, 534 (E.D. Va. 2007) (holding that "a car dealership, and . . . the president and registered agent of [the dealership], are creditors of Johnson, and this court has previously held that creditors are not liable under the FDCPA.") (internal quotations omitted).  Courts have also held that financing companies "engaged in the collection of [their] own debts, as opposed to the debts of another[,]" are not debt collectors. *Goia v. CitiFinancial Auto*, 499 F. App'x 930, 938 (11th Cir. 2012); *see also, Akpan v. First Premier Bank*, Civ. No. DKC-09-1120, 2010 WL 917886, at \*4 (D. Md. Mar. 8, 2010) ("Plaintiff has not alleged that Defendant [financing company] attempted to collect debts on behalf of a third party or used another name in order to appear to collect debts as a third party.  Therefore, he has failed to state a claim upon which relief can be granted under the FDCPA.").  Accordingly, McMillan's claims under FDCPA §§ 1692e(11) and 1692h, both of which statutes apply only to debt collectors, fail.

McMillan has also not sufficiently supported his claim that DARCARS violated FDCPA § 1692j(a), which prohibits furnishing a form "knowing that [it] would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of . . . a debt[.]"  McMillan has not alleged which "form" he believes violated this provision, and so this claim fails.[7]  (Lease Agreement ¶ 1.)

---

[7] McMillan asserts that DARCARS violated this provision because it "[led him] to believe [he] was obligated to make lease payments when in fact [he] acquired the vehicle with [his] credit." (Compl. ¶ III.) This conduct is not prohibited

For these reasons, McMillan's FDCPA claims will be dismissed.[8]

### e. *FCRA Claims*

McMillan has also failed to state a claim for relief against TFS under the FCRA. He claims that TFS violated FCRA §§ 1681a(d)(2)(A)(i), 1681b(a)(2), and 1681s-2(a)(1)(A) by "report[ing] his] transaction" to consumer reporting agencies "without [his] written instructions" and by "knowingly report[ing] inaccurate information . . . by alleging [he] owe[s] a debt on a consumer credit transaction." (Compl. ¶ III.)

First, § 1681a(d)(2)(A)(i) is a definitional provision which provides no right of action. *See* 15 U.S.C. § 1681a(a) ("Definitions and rules of construction set forth in this section are applicable for the purposes of this subchapter."); *see also Young v. Experian Info. Sols., Inc.*, Civ. No. TDC-22-1057, 2022 WL 16540838, at *4 (D. Md. Oct. 28, 2022) (finding that a different subsection of FCRA § 1681a "falls within the definitions section of the FCRA and . . . does not include a cause of action.").

McMillan's claim that TFS violated § 1681s-2(a)(1)(A) by "knowingly report[ing] inaccurate credit information" also fails because that provision has no private right of action. (Compl. ¶ III.) Violations of § 1681s–2(a) are "enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s[.]" § 1681s–2(d); *see Ausar-El v. Barclay Bank Del.*, Civ. No. PJM-12-0082, 2012 WL 3137151, at *2 (D. Md. July 31, 2012) ("FCRA makes clear that federal and state authorities have exclusive enforcement powers over § 1681s–2(a)." (citing *Beattie v. Nations Credit Fin. Servs. Corp.*, 69 F. App'x 585, 589, 591 (4th Cir. 2003))).

---

by § 1692j(a). Further, McMillan provides no support for this assertion, and the Court observes that the Lease Agreement does in fact obligate McMillan to make lease payments.

[8] Again, the Court need not reach the issue of whether McMillan's FDCPA claims are time-barred because it finds that they fail on their merits. (*See* Defs.' Mots. Dismiss, ECF Nos. 16, 25.)

Finally, because McMillan has not alleged that TFS is a consumer reporting agency, his claim that TFS violated § 1681b(a)(2) by "report[ing his] transaction without [his] written instructions" fails. (Compl. ¶ III.) The FCRA regulates activity by and related to any "consumer reporting agency," which is defined as "any person [who] . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers *for the purpose of furnishing consumer reports to third parties.*" 15 U.S.C. § 1681a(f) (emphasis added). Subsection 1681b(a)(2) makes it unlawful for "any consumer reporting agency" to "furnish a consumer report" except under certain enumerated circumstances. McMillan does not allege that TFS meets the FCRA's definition of a "consumer reporting agency" such that this statute would apply. (*See generally* Compl.)

For these reasons, McMillan's FCRA claims are dismissed.

### D. Finality of Dismissal

In closing, the Court specifies that McMillan's Complaint will be dismissed with prejudice and without leave to amend. The Court of Appeals for the Fourth Circuit has instructed that, "when the district court believes a deficiency in a complaint can be cured, it should say so and grant leave to amend." *Britt v. DeJoy*, 45 F.4th 790, 796 (4th Cir. 2022). In view of the myriad deficiencies discussed above, however, the Court concludes that "amendment is inappropriate here and would be futile[.]" *Jones v. Specialized Loan Servicing*, Civ. No. RDB-22-1987, 2023 WL 1442435, at *8 (D. Md. Feb. 1, 2023). Accordingly, McMillan's claims are dismissed with prejudice and the dismissal Order that will issue will be "final and appealable." *Britt*, 45 F.4th at 796.

### IV. Conclusion

For the reasons stated above, a separate Order will issue (ECF No. 34) granting the Toyota Defendants' Motion for Extension of Time (ECF No. 15); denying McMillan's Motions to Add

22

Defendants and to Amend the Complaint (ECF Nos. 17, 18, 29); granting the DARCARS Defendants' and Toyota Defendants' Motions to Dismiss (ECF Nos. 16, 25); dismissing the Complaint *sua sponte* as to Mark Templin; and directing the Clerk to close this case.

DATED this **13** day of June, 2023.

BY THE COURT:

James K. Bredar
Chief Judge

23